UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 15-356 (RHK)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **PLEA AGREEMENT AND SENTENCING STIPULATIONS** |
| MALAH AUSTIN MEHN | |
| Defendant. | |

The United States of America and MALAH AUSTIN MEHN (hereinafter referred to as "Defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only Defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** Defendant agrees to plead guilty to Count 1 of the Information, which charges him with bank fraud, in violation of 18 U. S. C. Sections 1344 and 2.

2. **Factual Basis.** Defendant stipulates and agrees to the following facts and further agrees that, were this matter to go to trial, the United States would prove the following facts beyond a reasonable doubt:

   a. On or about May 4, 2012, in the State and District of Minnesota, Defendant, aiding and abetting and being aided and abetted by others, knowingly executed and attempted to execute a scheme and artifice to

SCANNED
JAN 2 8 2016
U.S. DISTRICT COURT ST. PAUL

    defraud a financial institution and to obtain the money and funds owned by and under the custody and control of a financial institution by means of material false and fraudulent pretenses, representations, and promises.

b. More specifically, on or about May 4, 2012, Defendant and La'Davionne Garrett, aiding and abetting each other, deposited three fraudulent checks into Garrett's checking account at Wells Fargo Bank by using the ATM at the branch location at 4141 Lyndale Avenue North, in Minneapolis:

    (1) At 4:09 p.m., Defendant and Garrett deposited check number 3032 drawn upon the closed TCF Bank checking account held by I.Y.I., made payable to Garrett in the amount of $800.00. The TCF Bank account held by I.Y.I had been closed by TCF after the bank discovered the account had been opened with a worthless check.

    (2) At 5:28 p.m., Defendant and Garrett deposited check 1187, drawn upon the closed Bank of America checking account Defendant had opened in the name of "Malah A. Mehn., Sr." Check 1187 was made payable to Garrett in the amount of $1,800.00. The "Malah A. Mehn Sr." account had previously been closed by Bank of America due to fraudulent activity.

    (3) At 5:29 p.m., Defendant and Garrett deposited check 1181, drawn upon the same closed Bank of America checking account of "Malah A. Mehn, Sr." Check 1181 was made payable to "Junk Dog" in the amount of $1,900.00.

    (4) Defendant and Garrett were able to withdraw approximately $200 from Wells Fargo as a result of making these deposits on May 4, 2012.

c. At all times, Defendant knew the checking accounts upon which the aforementioned checks were written had been closed and that the checks were worthless. Defendant aided Garrett in depositing the checks because he intended to withdraw funds before the bank discovered their fraud, and he intended to (and did) receive a portion of funds that they were able to obtain before the bank realized the fraud.

d. Defendant agrees that the intended loss for the offense of conviction was $4,500, the amount of the three above-listed checks that Defendant and Garrett deposited at the Wells Fargo ATM on May 4, 2012.

e. Wells Fargo Bank was then, and is now, insured by the Federal Deposit Insurance Corporation.

f. Defendant understands and agrees that he is accountable for relevant conduct under the United States Sentencing Guidelines, although not arising from the offense of conviction. In this case, Defendant's relevant conduct includes but is not limited to: (1) fraudulently obtaining and stealing bank account information of victims in the State of Minnesota and elsewhere; (2) negotiating counterfeit checks that were created by others known to Defendant by using fraudulently obtained and stolen bank account information of victims; (3) recruiting others to negotiate counterfeit checks and then acting as a conduit by arranging for counterfeit checks to be created and then delivering those checks to the recruits; and (4) negotiating and recruiting others to negotiate legitimate personal checks

3

that had been stolen or otherwise obtained for accounts that had been previously closed, knowing those checks were worthless. Defendant agrees that the loss caused by transactions that constitute relevant conduct for purposes of calculating the sentencing guidelines is $50,939.98.

3. **Waiver of Indictment.** Defendant agrees to waive indictment by a grand jury on this charge and to consent to the filing of a criminal information. Defendant further agrees to execute a written waiver of Defendant's right to be indicted by a grand jury on this offense.

4. **Waiver of Pretrial Motions.** Defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, Defendant knowingly, willingly, and voluntarily gives up the right to file pre-trial motions in this case.

5. **Statutory Penalties.** The parties agree that Count 1 of the Information carries statutory penalties of:

    a. a maximum of 30 years imprisonment;

    b. a supervised release term of at least 2 years up to a maximum supervised release term of 5 years;

    c. a fine of up to $1,000,000;

    d. a mandatory special assessment of $100;

    e. payment of mandatory restitution in an amount to be determined by the Court.

6.  **Revocation of Supervised Release.** Defendant understands that if Defendant were to violate any condition of supervised release, he could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

7.  **Guideline Calculations.** The parties acknowledge that Defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

   a.  Base Offense Level. The parties agree that the base offense level for conspiracy to commit bank fraud is 7. (U.S.S.G. § 2B1.1(a)(1))

   b.  Specific Offense Characteristics. The parties agree that the offense level should be increased by 6 levels because loss amount is more than $40,000 but less than $95,000. (U.S.S.G. § 2B1.1(b)(1)) The parties also agree that the base offense level should be increased by another 2 levels because the offense involved 10 or more victims. (U.S.S.G. § 2B1.1(b)(2)(A)(i)) The parties agree that an additional 2 level enhancement should apply because the offense involved unauthorized use of the identification of another in order to obtain another means of identification. (U.S.S.G. § 2B1.1(b)(11)(C)(i)) The parties agree that no other specific offense characteristics apply.

   c.  Chapter 3 Adjustments. The parties agree that the offense level should be increased by 3 levels, because Defendant was a manager and supervisor in a criminal activity involving five or more participants. (U.S.S.G. § 3B1.1(b))

   d.  Acceptance of Responsibility. The Government agrees to recommend that Defendant receive a 3-level reduction for acceptance of responsibility and to make any appropriate motions with the Court. However, Defendant understands and agrees that this

recommendation is conditioned upon the following: (i) Defendant testifies truthfully during the change of plea and sentencing hearings, (ii) Defendant provides complete and truthful information to the Probation Office in the pre-sentence investigation, and (iii) Defendant commits no further acts inconsistent with acceptance of responsibility. (U.S.S.G. § 3E1.1) The parties agree that other than as provided for herein no other Chapter 3 adjustments apply.

e. Criminal History Category. Based on information available at this time, the parties believe that Defendant's criminal history category is III. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. Defendant's actual criminal history and related status (which might impact his adjusted offense level) will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.

f. Guideline Range. If the offense level is 17 and the criminal history category is III, the Sentencing Guidelines range is 30 to 37 months of imprisonment.

g. Fine Range. If the adjusted offense level is 17, the fine range is $5,000 to $50,000. (U.S.S.G. § 5E1.2(c)(3))

h. Supervised Release. The Sentencing Guidelines require a term of supervised release of at least two years but not more than five years. (U.S.S.G. § 5D1.2(a)(1))

i. Sentencing Recommendation and Departures. The parties reserve the right to make a motion for departures from the applicable Guidelines range and to oppose any such motion made by the opposing party. The parties reserve the right to argue for a sentence outside the applicable Guidelines range.

8. **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the

applicable Guidelines range. If the Court determines that the applicable guideline calculations or Defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and Defendant will be sentenced pursuant to the Court's determinations.

9. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which Defendant is convicted. U.S.S.G. § 5E1.3. Defendant agrees to pay the special assessment prior to sentencing.

10. **Restitution**. Defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order Defendant to make restitution to the victim(s) of his crime. There is no agreement as to the amount of restitution. Defendant understands and agrees the Court may order Defendant to make restitution to any victim of the scheme regardless of whether the victim was named in the Information.

Defendant represents that he will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which Defendant has any right, title, or interest. Defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution and fines ordered by the Court.

Defendant agrees to complete the financial statement fully and truthfully before the date of sentencing.

11.    **Waivers of Appeal and Collateral Attack**. Defendant understands that 18 U.S.C. Section 3742 affords him the right to appeal the sentence imposed in this case. Acknowledging this right, and in exchange for the concessions made by the United States in this plea agreement, Defendant hereby waives all rights conferred by 18 U.S.C. Section 3742 to appeal Defendant's sentence, unless the sentence includes a term of imprisonment exceeding 37 months. In addition, Defendant expressly waives the right to petition under 28 U.S.C. Section 2255. However, the waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel. Defendant has discussed these rights with his attorney. Defendant understands the rights being waived, and he waives these rights knowingly, intelligently, and voluntarily.

12.    **Forfeiture**. Defendant agrees to forfeit to the United States pursuant to 18 U.S.C. § 982(a)(2)(A) all property constituting, or derived from, proceeds obtained directly or indirectly as a result of the violation charged in Count 1 of the Information. The United States reserves the right seek the direct forfeiture of assets, the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), and a forfeiture money judgment against Defendant.

13. **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and Defendant.

Date: 1/28/16

ANDREW M. LUGER
United States Attorney

BY: AMBER M. BRENNAN
Assistant U.S. Attorney

Date: 1/28/16

MALAH AUSTIN MEHN
Defendant

Date: 1/28/16

PATRICK W. FLANAGAN
Counsel for Defendant