UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | |
| Plaintiff, | DEFENDANT'S POSITION PAPER ON SENTENCING |
| Malah Austin Mehn, | Criminal No.: 15-CR-356 (RHK) |
| Defendant. | |

The Defendant, Malah Austin Mehn, by and through his attorney, Patrick W. Flanagan, hereby submits his position with respect to sentencing. Mr. Mehn objections continue to be in regards to his criminal history score calculation and the resulting criminal history category on the sentencing guidelines. Mr. Mehn does not object to the content regarding the offense, his participation in that offense, or the background information regarding his life.

Mr. Mehn pleaded guilty to a one-count Information of Bank Fraud in violation of 18 U.S.C. § 2. The PSR has determined Mr. Mehn's total offense level is 15. The PSR has calculated Mr. Mehn's criminal history at 10, which is a criminal history category V. A criminal history category V, with an offense level 15 results in a guideline sentence between 37-46 months. Mr. Mehn disagrees with this determination and will argue that his criminal history score should be no higher than 6, which is a criminal history category III. This would result in a guideline sentence between 24-30 months. Mr. Mehn will also be filing a variance motion. There is no mandatory minimum for Mr. Mehn's sentence.

In addition to asking for a sentence no greater than 24 months and based upon the arguments below, Mr. Mehn seeks the following: 1) To grant him time served on his sentence

and immediately place him on supervised release with special conditions; or, 2) to grant his motion for a variance so that he may serve an alternative to a prison sentence, such as a half-way house near his home, home confinement, or some other split-sentence; and 3) to serve his time in in Minnesota to be near his family.

**ARGUMENT**

**I.      SENTENCE REFORM**

Increasingly, criminal justice professions have argued that dwindling prison space should be reserved for the most serious and dangerous offenders, necessitating a reconsideration of alternative sanctions for first-time and nonviolent offenders.  *Alternative Sentencing in the Federal Criminal Justice System,* United States Sentencing Commission, January 2009, p1.  This is also reflected in the many specialty courts that States are implementing, including drug courts and veteran's courts.   For example, The United States Department of Justice, through the Bureau of Justice Assistance is actively engaged in developing National Best Practice Standards for specialty courts, such as drug courts, veteran's courts and others.  See, Office of Justice Programs, https://www.bja.gov/ProgramDetails.aspx?Program_ID=58; and National Association of Drug Court Professionals, http://www.nadcp.org/Standards.  The national best practices developed by the Department of Justice for these specialty courts argues against long prison sentences and instead the need for creating structure, support and guidance.

**II.     JUSTIFIED AND REASONABLE SENTENCE**

     **A.      Two Step Analysis For Sentencing**

There is a two-step analysis to be followed in federal sentencing.  The first step is to determine the proper sentencing guideline range for the defendant.  Gall v. United States, 128 S. Ct. 586, 596 (2007).  The second step is to consider factors in 18 U.S.C. § 3553(a) in order to

assess whether a departure or variance is appropriate for the Defendant. *See* Gall, 128 S. Ct. at 596-97; United States v. Roberson, 517 F. 3d 990, 993 (8th Cir. 2008).

### 1. Step One – Guideline Calculation

#### 1a. - Guideline Offense Calculation

Mr. Mehn agrees with the Sentencing Guideline Offense Calculation. The total offense level is 15. (PSR at p. 17, ¶ 83).

#### 1b. – Criminal History Calculation

The Pre Sentence Report (PSR) calculates Mr. Mehn's criminal history at 10, resulting in a criminal history category of V. (PSR p. 34, ¶132). This calculation, along with the Offense calculation, results in a Guideline sentence of 37-46 months. Mr. Mehn objects with this calculation and believes his criminal history score should be no higher than a category III. A criminal history category III, with an offense level calculation at 15, results in a guideline sentence of 24-30 months.

There are several violations listed on Mr. Mehn's criminal history computation that either overstate his criminal history score, and, or, should not be considered for the computation as the offenses are not crimes. The criminal history calculation in the PSR challenged by Mr. Mehn includes 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points. See USSG §4A1.1. A criminal history score implies that a sentence is for a crime. A petty misdemeanor is not considered a crime in Minnesota and only a financial penalty is imposed. Mr. Mehn asks This Court to consider Minnesota Statute §609.02, Subd. 4a, the definition of petty misdemeanor: "'Petty misdemeanor' means a petty offense which is prohibited by statute, which does not constitute a crime and for which a sentence of a fine of not more than $300 may be imposed." However, if the Court finds that petty misdemeanors are applicable to the criminal

history calculation, Mr. Mehn asks this court to find that petty misdemeanors and other traffic offenses overstate his criminal history.

Mr. Mehn continues to object to the following Petty Misdemeanors and misdemeanor offenses used in the calculation for his criminal history computation, or, if properly used, then these overstate his criminal history:

a. PSR paragraph 96, petty misdemeanor theft, 12/05/2005; this offense was used to calculate the criminal history score and assigned 1 point.

b. PSR paragraph 98, petty misdemeanor obstruction of legal process, 4/5/2006; this offense was not assigned a point for criminal history calculation as only 4 points can be used pursuant to statute. However, if another point was discounted, this offense might be used.

c. PSR paragraph 103, petty misdemeanor theft, 12/27/2008; this offense was used to calculate the criminal history score and assigned 1 point.

d. PSR paragraph 104, petty misdemeanor driving after cancellation, 04/08/2009; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute. However, if another point was discounted, this offense might be used.

e. PSR paragraph 105, petty misdemeanor driving after cancellation, 5/13/2009; this offense was not assigned a point for the criminal calculation as only 4 points can be used pursuant to statute. However, if another point was discounted, this offense might be used.

f. PSR paragraph 106, petty misdemeanor driving after cancellation, 8/24/2009; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute. However, if another point was discounted, this offense might be used.

 g. PSR paragraph 107, petty misdemeanor public nuisance, 3/21/2010; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute. However, if another point was discounted, this offense might be used.

 h. PSR paragraph 110, petty misdemeanor driving after cancellation, 10/12/2010; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute. However, if another point was discounted, this offense might be used.

 i. PSR paragraph 111, petty misdemeanor driving after cancellation, 12/05/2010; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute. However, if another point was discounted, this offense might be used.

 j. PSR paragraph 112, petty misdemeanor driving after cancellation, 1/04/2011; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute. However, if another point was discounted, this offense might be used.

 k. PSR paragraph 114, petty misdemeanor driving after cancellation, 4/30/2011; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute. However, if another point was discounted, this offense might be used.

 l. PSR paragraph 115, petty misdemeanor driving after cancellation, 5/11/2011; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute. However, if another point was discounted, this offense might be used.

 m. PSR paragraph 118, petty misdemeanor not carrying proof of insurance, 05/15/2012; driving after cancellation and not using a seat belt; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute. However, if another point was discounted, this offense might be used.

    n. PSR paragraph 119, petty misdemeanor driving after cancellation, 12/20/2012; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute.  However, if another point was discounted, this offense might be used.

    o. PSR paragraph 120; petty misdemeanor driving after cancellation, 01/16/2013; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute.  However, if another point was discounted, this offense might be used.

    p. PSR paragraph 121; petty misdemeanor driving after cancellation, 03/06/2013; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute.  However, if another point was discounted, this offense might be used.

    q. PSR paragraph 123; petty misdemeanor not carrying proof of insurance and driving after cancellation, 4/30/2013; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute.  However, if another point was discounted, this offense might be used.

    r. PSR paragraph 124; petty misdemeanor driving after cancellation, 05/18/2013; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute.  However, if another point was discounted, this offense might be used.

    s. PSR paragraph 126, petty misdemeanor possession of a small amount of marijuana, 10/31/2014; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute.  However, if another point was discounted, this offense might be used.

    t. PSR paragraph 127, driving after cancellation and license plate violation, 04/08/2015; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute.  However, if another point was discounted, this offense might be used.

Mr. Mehn asks the court to find that the following misdemeanor offenses overstate his criminal history as these offenses did not endanger people, or property:

aa.  PSR paragraph 93, driving after revocation, 8/13/2004; this offense was assigned 1 point for the criminal history calculation in the PSR;

bb.  PSR paragraph 94, driving after suspension, 8/26/2005; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute.  However, if another point was discounted, this offense might be used.

cc.  PSR paragraph 95, no driver's license in possession, 12/02/2005; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute.  However, if another point was discounted, this offense might be used.

dd.  PSR paragraph 97, driving after cancellation, 03/17/2006; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute.  However, if another point was discounted, this offense might be used.

ee.  PSR paragraph 99, possession of a small amount of marijuana, 02/06/2007; This offense was assigned 1 point for the criminal history calculation in the PSR.

ff.  PSR paragraph 101, driving after cancellation, 05/05/2008; This offense was assigned 1 point for the criminal history calculation in the PSR.

gg.  PSR paragraph 102, theft, 07/20/2008; This offense was assigned 1 point for the criminal history calculation in the PSR.

hh.  PSR paragraph 117, driving after revocation, 02/29/2012; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute.  However, if another point was discounted, this offense might be used.

ii. PSR paragraph 122, driving after cancellation, 03/29/2013; this offense was assigned 1 point for the criminal history calculation in the PSR.

jj. PSR paragraph 125, trespass, 07/15/2014; this offense was not assigned a point for the criminal history calculation as only 4 points can be used pursuant to statute. However, if another point was discounted, this offense might be used.

kk. PSR paragraph 128, driving after revocation, 07/16/2015; this offense was assigned 2 points for the criminal history calculation in the PSR.

ll. PSR paragraph 131, addition of 2 points for committing the offense of driving after revocation while on probation for another offense. The offense of driving after revocation is for not having a valid license at the time of the offense. The conduct involved for this offense may be for merely not paying fines, surcharges, or reinstatement fees with the department of motor vehicles. The offense is not based upon conduct that endangers life, or property of another. Mr. Mehn objects to this 2 level enhancement as overstating his criminal history score.

**Recalculating criminal history score and category**

Removing the above offenses from Mr. Mehn's criminal history score will then change his criminal history category. Mr. Mehn objects to the criminal history score of 10 and a category V. See PSR paragraph 132. Mr. Mehn asks This Court to not consider the petty misdemeanor offenses in his criminal history score, as those are not crimes, and, or find those matters and the others listed as overstating his criminal history. Mr. Mehn asks This Court to find his criminal history score to be 5, resulting in a criminal history category of III. This would result in a guideline range of 24-30 months and not the 37-46 months stated by the PSR. See PSR paragraph 194.

**Step Two - 18 U.S.C. §3553(a) Factors for variance, or departure**

Mr. Mehn grew up with many challenges that most people would have a difficult to comprehend.  Mr. Mehn was born in Liberia and lived there until he was about 8 years old.  He then moved to Cotre in West Africa.  His mother moved him from Liberia because Liberia was involved in a civil-war and Mr. Mehn's family lived in fear.

Mr. Mehn's mother was a business owner in Liberia.  She knew a tribal was going to happen as the President of other side killed local tribal members and leader.  They first ran to Marovia where they stayed for a year.  As an 8 year old child, Mr. Mehn does not remember the sounds of kids and games growing up, but instead the sounds of guns and grenades going off.  Eventually, the President of Liberia, Samuel Doe, was executed by the new regime.  The Mehn's then returned to Gbenga where his father's tribe was from.

During all of this, Mr. Mehn's mother continued her business and often traveled to the United States.  His father was an officer in Liberia.  During this time, Mr. Mehn had a nanny to supervise his actions while his parents worked.  Mr. Mehn's mother became increasingly concerned for her son's safety and decided to move him to the United States.  Mr. Mehn's parent's divorced before the move.  Mr. Mehn's father never came to the United States.  The war in his home country ripped another security blanket from him and now was separated by an ocean from his father.

Mr. Mehn never dealt with his childhood struggles before being supervised on this matter.  His mother worked hard to provide him and while she was insistent on him getting an education, he was often left without supervision while in the United States.  While the United States provided safety from warring tribes, his mother was not able to afford a nanny, or other things she was able to in their native country.  Mr. Mehn's mother is a nurse and operates a non-

profit agency that sends pharmaceuticals to Liberia and Monrovia.  His mother tried to make up for the lack of supervision by being extremely strict with Mr. Mehn, including corporal punishment.  This often caused clashes between the two.  This strict upbringing along with unresolved issues from being a child growing up in a war torn country has left Mr. Mehn with many unresolved emotional issues.  One of the mental health issues that Mr. Mehn deals with is Post Traumatic Stress Syndrome (PTSD).  This PTSD was caused by a child having to endure a brutal civil war where he heard gunfire, grenades and shelling on a daily basis.

     Mr. Mehn does have one child.  Mr. Mehn wishes he did not make the choices he did that caused him to be before this Court.  Mr. Mehn has a child and is responsible for child support payments.  Mr. Mehn fell behind in these payments, causing him to lose his driver's license and put him financial straits.  He made an impulse decision and became involved in this illegal activity.  Such impulsive decision-making is often found in young people who have not fully matured emotionally, or biologically.

     The Supreme Court's decision in <u>United State v. Booker</u>, 543 U.S. 220 (2005) excised the mandatory-guideline provisions of the 1984 Sentencing Reform Act and rendered those guidelines as merely advisory.  When sentencing, the court must now consider 18 U.S.C. §3553(a).  In so doing, after considering the nature and circumstances of the offense and the history and characteristics of the defendant, the court "shall impose a sentence that is sufficient, but not greater than necessary," to achieve Congress's specific sentencing purposes, including: reflecting the seriousness of the offense, to promote respect for the law, promote just punishment for the offense, and to provide the defendant with needed educational training in the most effective manner. "  18 U.S.C. §3553(a).  A "variance" is any factor under §3553 that may warrant a non-guideline sentence.  <u>Izarry v. United States</u>, 553 U.S. 708 (2008).

**To reflect the seriousness of the offense, promote respect for the law and to provide just punishment for the offense**.

Mr. Mehn has accepted responsibility for his actions and does not offer his explanation in this section as a way to minimize his actions.  Instead, this explanation is offered to help the Court understand what events occurred that led him to make the decisions he did.  With the support of those around him, Mr. Mehn recognizes that this offense does not have to define who he is, or who he will be.   Mr. Mehn has especially strong support from his mother and his girlfriend.

At first glance, it may appear that Mr. Mehn has an issue with authority and simply needs to be locked up in order to get him on the correct track.  However, especially with young men, this is not always the case and instead the justice system may wish to focus on providing guidance rather than incarceration as the educational tool.  One issue to consider is the way young people are not biologically equipped to make rational, logical decisions without some effort.  Especially, when confronted with stressful situations.  There has been some talk this may be the lack of fat tissue around the brain stem until the young male becomes older.  The fatty tissue may slow the thought process down enough as age creeps in, resulting in better decision making.  There are reported studies from the National Institutes on Health and Brain Development in adolescents showing that the pre-frontal cortex, the "executive" part of the brain is important for controlling reason, organization, planning, and impulse control, does not fully mature until the early twenties.  Jay N. Giedd, Structural Magnetic Resonance Imaging of the Adolescent Brain, 1021 Annals N.Y. Acad Science, 105-109, (June 2004);  See also, Elizabeth Williamson, *Brain Immaturity Could Explain Teen Crash Rate*, Wash. Post, A01 (February 1, 2005) (referring to the reports in Jay N. Giedd's article showing "the region of the brain that

inhibits risky behavior is not fully formed until age 25).   Adolescents "often use the emotional part of their brain, rather than the frontal lobe, to make decisions" and "[t]he parts of the brain that govern impulse, judgment, and other characteristics may not reach complete maturity until an individual reaches age 21 or 22." *United States Department of Justice, Office of Juvenile and Delinquency Prevention, Annual Report*, p. 8 (2005).

These studies raise certain interesting issues.  Especially in a situation like Mr. Mehn's where his childhood brain development was traumatized by civil war and constant chaos.  The question must be asked as to whether Mr. Mehn's brain and it's development into adult decision making was effected by his extreme childhood experiences.  Mr. Mehn has never dealt with these issues in therapy and his thought process often appears to be that of an adolescent. The scientific community may now be studying the biological status of an adolescent's brain to explain unexplained irrational behavior, society and the Courts have not needed science to know that there is more than just sociological reasons for immature and irrational behavior.  In the case of Gall v. United States, in varying downward when sentencing the Defendant, the Court discussed the Defendant's immaturity during the commission of the crime, as evidence by his post-offense rehabilitation.  128 S. Ct. 586 (2007).  "Youth is more than a chronological fact.  It is a time and a condition of life when a person may be most susceptible to influence and psychological damage (citation omitted)… It was not unreasonable for the district judge to view Gall's immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engage in such impetuous and ill-considered conduct in the future.  Indeed, his consideration of that factor finds support in our cases.  Id at 593, 601-602.  In Roper v. Simmons, The Court noted that "today our society views juveniles, in the words Atkins used respecting the mentally retarded, as categorically less culpable than the average criminal…

[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young.  These qualities often result in impetuous and ill considered actions and decisions… The susceptibility of juveniles to immature and irresponsible behavior means their irresponsible conduct is not as morally reprehensible of that of an adult…[t]he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." 125 S.Ct. 1183, 1186 (2005).

While nothing in these studies, or statements by The Court, indicate that a young person should not be held accountable, or that the a young person can't be deterred from abhorrent behavior, the studies do indicate mitigating reasons for the court to find that a young adult, or older adolescent, can learn respect for the law and be punished without having to walk inside prison walls.  This is especially true when the young person has shown post-offense remorse and rehabilitation.  As a result of this situation, Mr. Mehn has developed a closer relationship with his mother and developed a new respect for her hard work and what she has provided for him.  This in turn, has helped Mr. Mehn develop a stronger respect for the law, the purpose of laws and the need for him to abide by the law.  The fear of going to prison caused these changes and is a stronger deterrent to commit new offenses than actually taking away that unknown and incarcerating Mr. Mehn.

Mr. Mehn has clearly made immature decisions.  However, if Mr. Mehn's actions were considered in a slightly different light, The Court would have sufficient reason to vary from the guidelines and provide an alternative sentence to prison.  A sentence that has the potential to be more successful and effective for change in Mr. Mehn's life than a prison sentence would.  Mr. Mehn is currently 33 years old and was in his late 20's and early 30's when these offenses

occurred.  Mr. Mehn is still a very young man.  As the medical research noted above and Mr. Mehn's medical records indicate, there may be biological factors, mental health issues and chemical abuse issues.  These factors require guidance rather than punishment in order to correct behavior.

The biological factors mentioned in the studies could have very well been enhanced by Mr. Mehn's choice to consume alcohol and marijuana on a regular basis, while also failing to recognize the effect his mental health issues have on his decision-making.  Through the guidance of pre-trial release services, Mr. Mehn recognized these issues were greatly affecting his life.  The influence of his agent caused him to seek help with People Incorporated Mental Health Services in Brooklyn Center.  He received both a mental health and chemical dependency evaluation.  Mr. Mehn entered a 30 day residential treatment program and was successfully discharged on May 18, 2016.

Thankfully, Mr. Mehn has worked hard to make changes and overcome his marijuana, alcohol and mental health issues.  Where he was not employed at the time of his arrest, he is currently employed at AAA temporary employment services, but is hoping to look for a more permanent job if given the chance on probation.  This is a step in the right direction for Mr. Mehhn and that is due to the chance he has had while out on pre-trial release.  Mr. Mehn is a very bright individual who graduated near the top of his high school class and earned an academic scholarship to the Minnesota School of Business.  This experience in the federal court system and his treatment at People Incorporated has made Mr. Mehn realize how important his education is and how using that education will lead him to greater success, enjoyment of life and contributing to society than immature and criminal decision-making will ever do.  Mr. Mehn has disassociated himself from his former friends and is looking forward to re-start a sober, hard

working life where he can provide child support payments for his child and do his best to pay back any restitution amounts, or volunteer in order to make amends for his wrongdoing.

## CONCLUSION

Mr. Mehn now looks forward to a sober life and parenting his child. Given Mr. Mehn's age, recent treatment and change in life style while on pre-trial release, Mr. Mehn requests that this Court sentence him within a range that is reasonable, but not greater than necessary and consider any departures or variances that would allow for an alternative sentence. Mr. Mehn request includes a request for The Court to consider a satisfied sentence with an immediate placement on supervised release with special conditions. Conditions such as aftercare treatment, parenting classes, cognitive skill courses, college courses and job training courses would be appropriate conditions. If The Court does not believe a departure, variance, or a satisfied sentence is appropriate, Mr. Mehn asks This Court to be sentenced at the low end of the sentencing guidelines, with a recommendation to a facility in Minnesota and a recommendation to the Residential Drug Abuse Program (RDAP). If the Court does sentence Mr. Mehn to a prison sentence, Mr. Mehn does request a turn in date. Such a sentence is not greater than necessary to accomplish the goals of sentencing.

Dated: August 24, 2017

Respectfully submitted,

*s/Patrick W. Flanagan*
PATRICK W. FLANAGAN
Attorney ID No. 0238132
Attorney for Defendant
5669 147th Street North
P.O. Box 167
Hugo, MN 55038
(651) 291-5453